[Williams et al. v. Spragins, Buck & Co. et al.]

# Williams et al. v. Spragins, Buck & Co. et al.

*Bill in Equity to set aside Conveyances as Fraudulent.*

1. *Averments of bill to set aside fraudulent conveyances; when sufficient.*—On a bill filed by creditors to set aside as fraudulent certain conveyances by their debtor, it is not necessary that complainants should aver all the matters of evidence tending to establish fraud; but they must aver with accuracy and clearness matters essential to their right of recovery, and the averments must be of such facts from which, unexplained, a conclusion of fraud arises.

2. *Same; same.*—A bill by creditors, which alleges that their debtor conveyed all of his property to his minor children to defraud past and future creditors; that he withheld the deeds from record for nearly a year, and remained in possession of the property holding himself out to complainants as its owner; that complainants had no knowledge of said deeds until after the debt to them was contracted; that the debtor also gave a mortgage on his property to one who knew of his failing condition, and of his intention to hinder, delay and defraud his creditors, and after the execution of said mortgage the debtor remained in possession of the said property, consuming and disposing of it, thereby hindering, delaying and defrauding complainants in the collection of their debts,—sufficiently charges fraud on the part of the respondents in the execution of the several conveyances, and sufficiently shows the fact of such transactions to have been to hinder, delay and defraud complainants and the debtor's other creditors; and is not demurrable on the ground of its insufficiency in charging fraud on the part of the debtor.

3. *Same; mortgagee not an improper party defendant.*—In such a case the joinder of the mortgagee as a party defendant does not render the bill multifarious, since, according to the averments of the bill, a unity of fraudulent design permeates the whole transaction, and imparts to the suit a singleness of purpose.

4. *Same; debtor's wife not a necessary party.*—On a bill, filed by creditors to set aside as fraudulent voluntary conveyances by their debtor to his children, in one of which his wife joined, the wife is not a necessary party; the debtor, and not she, being the alleged fraudulent grantor, and any interest she might own in the property having been conveyed to his children, who were made parties to the suit.

5. *Same; bona fide mortgagee a proper party.*—Where, in a bill filed by certain creditors to set aside as fraudulent certain conveyances by their debtor, it is averred that there was a valid mortgage on a part

[Williams et al. v. Spragins, Buck & Co. et al.]

of the property alleged to have been fraudulently conveyed, such *bona fide* mortgagee, though not a necessary party, is a proper party, where the purpose of making the mortgagee a party was not to have the mortgage foreclosed, but to ascertain what interest, if any, she had in the property, and to have it protected.

APPEAL from the Chancery Court of Lee.

Heard before the Hon. S. K. McSPADDEN.

The bill is filed by the complainants, appellees here, as creditors of R. G. Williams, to set aside as fraudulent conveyances made by him to his children, and a mortgage made by him to one Montgomery, which is alleged to have also been fraudulently made.

The bill alleges that said R. G. Williams became indebted to the complainants as follows, to Spragins, Buck & Co. for goods, wares and merchandise sold to him by them, in the summer and fall of 1892, amounting to the sum of $3,818.40 ; to The Perry Manufacturing Company for buggies, carts and other vehicles, sold by said company to him, to the value of $1,063.43, for which he gave his note, dated January 4th, 1893, and payable March 15, 1893 ; to the Nashville Saddlery Company for merchandise sold by it, to the amount of $284.30, for which he gave his note to said company, dated December 9th, 1892, payable March 13th, 1893 ; to the Kentucky Manufacturing Co., for merchandise sold, to the value of $2,-514.61, for which he executed his note to said company, dated October, 1892, payable March 1, 1893 ; and to J. K. Orr & Co. for $440.18, by note dated December 5th, 1892, payable March 1, 1893 ; that said R. G. Williams has been engaged in merchandising in Opelika for the past twenty years, during which time he held himself out to the business world as a man of large means and property, gaining thereby for himself a large and extensive credit, and made large investments in real estate, farming lands and other property ; that in 1891, he formed a mercantile co-partnership with one J. G. Whitfield, and carried on a mercantile business in Opelika, under the style of R. G. Williams & Co., for about twelve months, and about June, 1892, they ceased to carry on business under said firm name, and it was afterwards carried on under the name C. P. Williams, under a pretended sale to him ; that said C. P. Williams was a son of said R. G. Williams, who was, at the date of said

pretended sale to him, a minor, with no means or business experience, and who was then and is now insolvent; that while said business was carried on in the name of his said son, the said R. G. Williams, remained at the place of business actively managing and controlling the same; that during that time, the said C. P. Williams endeavored to buy goods upon his own credit, but complainants refused to sell him, but sold exclusively upon the credit and responsibility of his father, the said R. G. Williams, for which he executed his obligations to them, as above set out; that when it was ascertained that the son could not buy goods upon his own credit, the business was discontinued under his name, and the said R. G. Williams, managing and controlling it, disposed of the assets, consisting of a large stock of merchandise, to sundry persons, whose names are unknown to complainants, which was done in furtherance of his purpose to defraud complainants, and to hinder, delay and defraud his creditors.

It is further averred, that on the 27th of June, 1892, said R. G. Williams executed deeds of gift to all of his property, both real and personal, and to his effects of every description, to his four children, Claude P., Earle G., Robert G. and Eleanora V. Williams; that said deeds were secretly and fraudulently withheld and never made known, until placed upon record in the counties where the property sought to be conveyed is situated—in the county of Lee on the 1st day of March, 1893, and in the county of Chambers, on the 11th March, 1893; that the grantees in said deed were all minors, and two of them under fourteen years of age, at the time, and all of them resided with their father, the said R. G. Williams; that said deeds were secretly and fraudulently made, with the view of future dealings with complainants, and with the purpose of defrauding them as well as other future creditors; that said Williams, besides the amounts in which he is indebted to complainants, is indebted, as complainants are informed and believe, to other creditors, to the amount of about $20,000, the greater part of which has been contracted by him since the date of said deeds of gift; that after the date of said deeds of gift to his children, the said Williams remained in the possessions and control of all of said property described in said conveyances, and continued to hold himself out to com-

[Williams et al. v. Spragins, Buck & Co. et al.]

plainants, as well as to the business world, as the owner of said property; that complainants had no knowledge of said conveyances until after the creation of the indebtedness to them, as above set forth, and not until after said deeds were filed for record as above stated, and that said Williams has been and is now in possession of said property, and is carrying on large and extensive farming operations.

It is further averred, upon the information and belief of complainants, that said Williams and his said son, C. P. Williams, on the 2d of February, 1893, made and executed to one Montgomery a mortgage, exhibited to the bill, which purports to have been given to secure an indebtedness of $10,000, which complainants believe, charge and aver was simulated and fictitious; that said mortgage was not put upon record, until the 13th of March, 1893; that on the 17th of March, the grantors and grantees therein, made an entry on the margin of said record, reducing the amount to $5,000, which is stated to be for advances made, to make a crop in the year 1893, and it is averred, that at the time of the execution of said mortgage, said Montgomery had full knowledge of the failing condition of said R. G. Williams and of his large indebtedness to creditors, and that said mortgage was made to hinder, delay and defraud complainants and his other creditors; that said mortgage was executed to cover up all the personal property, notes and accounts which the said R. G. and C. P. Williams claimed to own at the time of its execution, and what they might acquire during the year, and thereby hinder and delay complainants and the other creditors in the collection of their just demands; that the mortgagors are in the possession, use and enjoyment and control of nearly all the property described in said mortgage, and that they are using, consuming and disposing of a portion of said property, thereby hindering, delaying and defrauding complainants in the collection of their debts.

It is further stated that, as complainants are informed, Mrs. T. C. Fitzgerald holds a mortgage on a portion of the real estate conveyed by said Williams to his children, but which, as they are informed, has been almost if not entirely paid off and discharged; and it is further averred, that all of the said conveyances, except the mortgage to Mrs. Fitzgerald, were fraudulent in their

[Williams et al. v. Spragins, Buck & Co. et al.]

inception, and made with the purpose of hindering and delaying complainants in the collection of their just demands, and are, therefore, void.

The deed of gift of lands, which is exhibited to the bill, is executed by said R. G. Williams and his wife, E. V. Williams, and recites, that R. G. Williams and wife, E. V. Williams, in consideration of the love and affection which they have towards their beloved children, give, grant and convey unto them &c., and conveys a large amount of land in Lee and Chambers counties, and in the city of Opelika.

The other deed exhibited is by said R. G. Williams to his said children, of same date as the conveyance by him and his wife of the lands to said children, viz., 27th June, 1892, and conveys, horses and mules, on said lands conveyed to his said children, wagons, buggies, farm tools and implements owned by him, and all growing crops, household and kitchen furniture, and concludes, "in fact all moneys and all other property that I now own, after my debts are paid that I now owe, then what money I have is to belong to them."

The mortgage to Montgomery, executed the 2d of February, 1893, conveys the crops of every kind raised by mortgagors and their interest in tenants' or co-tenants' crops in Lee county, in the year 1893, and also a large number of carts, buggies, and wagons, harness, mules, horses, lumber, corn, fodder, cotton seed, &c., which are alleged to belong to the mortgagors and to be free from incumbrance, and other personal property, notes and accounts, that they may own during the year; and the mortgage was given, also, to secure any future advances which might be made by the mortgagee to them. It is also stated that a mortgage by the same parties to said Montgomery on crops and stock in Chambers county, Alabama, secures the same debt.

The said R. G. Williams, C. P. Williams and the other three children of said R. G. Williams, the said Montgomery and Mrs. T. C. Fitzgerald are made parties defendant to the bill.

The prayer is for an account to ascertain the amount due each of complainants; that said deeds of gift and the mortgage to said Montgomery be declared null and void, and subject to the payment of complainants' debts, and ordered to be sold for their payment; that Mrs. T.

C. Fitzgerald be required to propound and show what balance, if any, is due upon her mortgage, and that her rights, if any, be protected by the decree of the court; and for general relief.

The defendants interposed demurrers to the bill based on many grounds which were overruled. The decree overruling the demurrers is now appealed from, and is assigned as error. The demurrers, so far as is necessary to be noticed, are sufficiently referred to in the opinion of the court.

J. M. CHILTON, W. J. SAMFORD and A. & R. B. BARNES, for appellants.—The averments of fraud in the bill are sufficient to give it equity.—*Flewellen v. Crane*, 58 Ala. 627; *Chamberlain v. Dorrance*, 69 Ala. 40; *Bailey v. Litten*, 52 Ala. 282; *Cromelin v. McCauley*, 67 Ala. 542; *Robinson v. Moon*, 56 Ala. 241; *Seals v. Robinson*, 75 Ala. 369; *Spence v. Duren*, 3 Ala. 251; *Cockrell v. Gurley*, 26 Ala. 405; *Duckworth v. Duckworth*, 35 Ala. 70.

The bill is multifarious in making Montgomery a party defendant.—*Adams v. Jones*, 68 Ala. 117; *Clay v. Gurley*, 62 Ala. 14; *Conner v. Smith*, 74 Ala. 115; *Tutwiler v. T. C. I. & L. Co.*, 89 Ala. 391.

JAMES R. DOWDELL, THOMAS L. KENNEDY and S. O. HOUSTON, *contra*.—The bill was not subject to any of the demurrers interposed by the respondent.—*Dickson v. McLarney*, 97 Ala. 383; *Seals v. Robinson*, 75 Ala. 364; *Huggins v. Perrine*, 30 Ala. 396; *McGhee v. Bank*, 93 Ala. 196; *Carter v. Coleman*, 82 Ala. 181; *Lehman v. Van Winkle*, 92 Ala. 443; *Marshall v. Croom*, 60 Ala. 121.

HARALSON, J.—I. The demurrer to the bill questions the sufficiency of its allegations, as charging fraud in the defendant, R. G. Williams, in the execution of the voluntary conveyances to his children, and the mortgage by him and his minor son, C. P. Williams, to Montgomery. If tainted with actual fraud, the rule is, that voluntary conveyances are void, even as to subsequent purchasers.—*Dickson v. McLarney*, 97 Ala. 383.

As to averments charging fraud, it is well settled, that complainant is not bound to aver all his matters of evidence tending to establish fraud, but he must show, with accuracy and clearness, matters essential to his right of

recovery, and these must not be left to depend on inference or on general or ambiguous averments.—*Seals v. Robinson*, 75 Ala. 369. The test of the sufficiency of such averments is, not whether they might not have been more direct and full in the statement of facts out of which the conclusion of fraud arises—for these are not required to be minutely alleged; but, whether they are sufficient to notify the defendants that the *bona fides* of the transactions are assailed, and to put in issue their validity. General averments of facts, from which, unexplained, a conclusion of fraud arises, are sufficient.— *Pickett v. Pipkin*, 64 Ala. 520; *Buford v. Steele*, 80 Ala. 148; *Pollak v. Searcy*, 84 Ala. 262.

In this bill the averments of fraud, and of facts relied on to show it, both in the execution of the voluntary conveyances and the Montgomery mortgage, are direct and positive. The certain effects of such transactions was to deprive complainants and other creditors of their claims, and the bare statements of the case as made, are sufficient to show the effect of these transactions to be to hinder, delay and defraud, as well as the bad motive with which they were done. This was all that was necessary.—*Sims v. Gaines*, 64 Ala. 396; *Buford v. Steele, supra*.

II. The execution of the mortgage by R. G. Williams and his son, C. P. Williams, to Montgomery, on the facts stated, show it to be a part of a general scheme, on the part of the defendant, R. G. Williams, participated in by said Montgomery, to defraud the creditors of said Williams. The facts averred are sufficient, unexplained, to warrant the conclusion of fraud. To have joined said Montgomery as one of defendants, does not render the bill multifarious. This is a common practice, sanctioned by the courts in the interest of convenience and of doing complete justice. In such cases a unity of fraudulent design is held to permeate the whole transaction, so as to impart to the suit a singleness of object and purpose. *Buford v. Steele, supra*; *Russell v. Garrett*, 75 Ala. 348; *Lehman v. Meyer*, 67 Ala. 396; *Hinds v. Hinds*, 80 Ala. 225; *Handley v. Heflin*, 84 Ala. 604.

III. Mrs. E. V. Williams, wife of R. G. Williams, was not a necessary party. If she owned any interest in the lands, she conveyed it to her children, who are made parties to the suit. R. G. Williams is the alleged

[Goldthwaite, Receiver, v. Janney & Cheney, Trustees;]
[Abraham v. Same.]

fraudulent grantor, and not she.—Story's Eq. Pl., §§ 231, 262, 570.

IV. Mrs. Fitzgerald was not a necessary party. The purpose in joining her was not to compel her to foreclose her mortgage, if she had one, but to ascertain if she had any and what interest, and have it protected. The complainants as creditors of an alleged fraudulent voluntary grantor do not assail her mortgage, if she has one, but the purpose is to ascertain her interest in any part of the property fraudulently conveyed, so as to reach the residuum. If she has any interest she may disclose it, and have it protected, or if she has none she may disclaim. It is a common practice to make parties defendants to bills, who are supposed to have some interest, and they are proper parties, at least.

V. This covers all the grounds of demurrer insisted on in argument by defendants' counsel, and which appear necessary for us to notice. There are many grounds they leave untouched, with the italicized suggestion, "*Each ground of demurrer is insisted on and is not waived.*" It would have been tedious for them to pursue the discussion of these grounds, and we deem it unnecessary to go farther than they did, and decline to undertake what they seemed to think was useless.

Affirmed.