[Comer v. Heidelbach.]

# Comer v. Heidelbach.

*Bill in Equity by General Creditor, for Injunction Against Attachment Proceedings as Fraudulent.*

1. *Collusive attachment; when void as against other creditors, though debt not fictitious or simulated.*—Where the plaintiff and the defendant in attachment collude together for the purpose of fraudulently transferring by the proceeding the property of the latter to the former, such attachment is void as against creditors, who may be thereby hindered, delayed or defrauded (Code, § 1735), and is an attempt to dispose of property fraudulently, within the meaning of the statute (Code, § 3544) conferring upon a creditor without a lien the right to equitable relief against such attempt, though the alleged indebtedness of the defendant to the plaintiff in attachment is not fictitious or simulated.

APPEAL from the Chancery Court of Barbour.

Heard before the Hon. JERE N. WILLIAMS.

The opinion states the nature of the case. In reference to the attachment sued out by H. M. Comer, Jr., the bill averred that said attachment was sued out on the ground, as stated in the affidavit therefor, that said W. T. Comer had monies, property or effects liable to satisfy his debts, which he fraudulently withheld; that said ground did not exist at the time, and said allegation in said affidavit was and is untrue in point of fact, and there was no probable cause for believing that said ground existed; that none of the grounds authorizing an attachment under the laws of Alabama existed at the time said affidavit was made, and that there was no probable cause for believing that any of them existed; that W. T. Comer had been using extraordinary effort to sell his said goods in a legitimate way, and that as fast as he sold them he appropriated substantially all the proceeds to payment of his honest debts, and lived with economy; that a great many claims against said W. T. Comer had passed into the hands of attorneys in Eufaula for collection; that W. C. Swanson, one of such attorneys, was the attorney for said H. M. Comer, Jr., in said attachment suit, and made the affidavit for said

[Comer v. Heidelbach.]

attachment, and was an intimate and personal friend of said W. T. Comer, and had had other claims against him for some time, for collection ; that the honesty and energy of said W. T. Comer to apply all the proceeds of his sales to payment of his debts were known to the lawyers of Eufaula, and if not known to said Swanson, could have been easily ascertained by him at the time said affidavit was made. The bill further averred that on the day before said attachment was sued out, said W. T. Comer, having been sued by several of his creditors in the justice court, and the cases set for trial on that day, obtained a continuance of said cases, "knowing that if the judgments were then rendered, the special affidavit would be made and executions issued at once." It is charged that said W. T. Comer obtained said continuance to enable him to arrange for the issuance of said attachment in favor of H. M. Comer, Jr. ; that on the day of the issuance of the attachment W. T. Comer and said Swanson were repeatedly together "consulting and discussing," H. M. Comer, Jr., not being in Eufaula, but being represented by said Swanson. It is further charged that said attachment was issued and levied "in pursuance to a prior agreement, express or implied, between said W. T. Comer and said Swanson, for the purpose of giving said H. M. Comer, Jr., a prior lien over all other creditors," and that said issuance and levy were in pursuance of a collusion between said W. T. Comer and said Swanson, and for the purpose of hinderdering, delaying, or defrauding complainants and other creditors of said W. T. Comer. Other material facts are stated in the opinion.

G. L. Comer, for appellants.

S. H. Dent, Jr., and A. H. Merrill, contra.

HARALSON, J.—This bill was filed by simple contract creditors, the appellees,—whose debts were due and unpaid on the 5th of March, 1895, the date of the filing of the bill,—against the appellant, W. T. Comer, who was, as is alleged, insolvent on the dates of the attachment and of the filing of the bill. The object of the bill was to set aside, as collusive and fraudulent, a writ of attachment which had been, on the day specified above,

sued out by H. M. Comer, Jr., a cousin of appellant, which was levied by the sheriff on a stock of goods of the appellant, defendant in attachment, which constituted all his property. H. M. Comer, Jr., and the sheriff were made parties defendant. The prayer was for an injunction restraining H. M. Comer, Jr., from prosecuting his attachment against said W. T. Comer to judgment, and from receiving from the sheriff any money arising from the sale of said goods; that the sheriff be ordered not to sell the goods under said attachment; that he be required to pay into court all money he may have obtained or may afterwards obtain as the result of said levy; that the sheriff be appointed receiver, to act both as sheriff and receiver; that said attachment be declared fraudulent and void; that a lien be declared in favor of complainants on said goods; that the proceeds of the same, when sold, be paid over to complainants, till their debts are fully paid, and for general relief.

There was a demurrer to the bill, and a motion made by defendants to dismiss it for want of equity. The demurrer was overruled, and the motion to dismiss denied. The grounds of demurrer were, that the bill was not sufficiently specific in its allegation of fraud as alleged; that the bill charges no fact from which the alleged collusive and fraudulent character of the attachment can be legally inferred, and that the bill does not aver that the attachment was sued out upon a fictitious or simulated demand, and that the amount it was sued out for was not justly due from the defendant to the plaintiff in attachment, nor that there was in the transaction a reservation of a benefit or secret trust in behalf of defendant, W. T. Comer.

· Section 3544 of the Code provides, that "a creditor without a lien may file a bill in chancery to discover, or to subject to the payment of his debt, any property which has been fraudulently transferred or conveyed, or *attempted* to be fraudulently transferred or conveyed by his debtor." Section 1735 makes the provision that "all conveyances or assignments in writing, or otherwise, of any estate or interest in real or personal property, and every charge upon the same, made with intent to hinder, delay, or defraud creditors, or other persons, of their lawful suits, damages, forfeitures, debts or demands, and every bond, or other evidence of debt, given,

[Comer v. Heidelbach.]

suit commenced, decree or judgment suffered, with like intent, against the persons who are or may be so hindered, delayed or defrauded, their heirs, personal representatives and assigns, are void." We have given construction to these statutes, in their application to a suit such as we have before us.—*Cartwright v. Bamberger, Bloom & Co.*, 90 Ala. 405. In that case it was said: "No one doubts that a writ of attachment, issued collusively between creditor and insolvent debtor, for the purpose of giving preference, and with intent to effect a fraudulent transfer of the debtor's property to the plaintiff in attachment, through the machinery of the attachment process, is a void suit or proceeding within the meaning of Section 1735 of the Code. Nor can we see any reason why the suffering such an attachment by the debtor, with the fraudulent intent, is not an 'attempt' to fraudulently transfer the attached property, within the meaning of Section 3544 of the Code. * * * Such a transfer may be made equally through the medium of an attachment suit, and the agency of the sheriff. * * * The arm of the law should not be shortened in its effort to reach and arrest fraud ; and legislation, having this purpose in view, should be liberally construed to accomplish the purpose of its enactment." That case, not distinguishable in principle from this, received elaborate discussion, and has since been approved and followed by us. There is no necessity to go over the same ground again in this case.—*Bamberger, Bloom & Co v. Voorhees*, 99 Ala. 202; *The Planters and Merchants Bank v. Lancheimer*, 102 Ala. 457.

It can make no difference that the bill does not aver that the alleged indebtedness of the defendant to the plaintiff in attachment was fictitious or simulated and not *bona fide*. If the plaintiff and the defendant in attachment colluded together for the purpose of transferring the property of the latter, the effort to resort to such judicial machinery, as was said in the case we have just cited, may be characterized as an "attempt" to make such fraudulent transfer. It is the collusion and fradulent use that is attempted to be made of the processes of the court in such cases, so opposed to the whole spirit and policy of the statutes, which the law abhors and denounces. If an attaching creditor fairly and honestly outstrips other creditors in a race of diligence, in suing

[Southern Bell Telephone Co. v. Francis.]

out his attachment, to secure a first lien on an insolvent debtor's effects, liable to attachment, the law upholds his effort, and rewards him, in according to him the preference of payment thus acquired. But such a creditor should come into the court with clean hands, when he seeks such a right. The law will not sanction a secret, deceitful arrangement and agreement between him and the defendant in attachment, the direct effect of which is to hinder, delay and defraud his other creditors, by means of which his property is transferred to the attaching creditor, possibly in the interest of the debtor. Such an attachment is a "suit commenced," with the view of the defendant's suffering a judgment against himself, to hinder, delay and defraud his creditors, and is void against them.—Code, § 1735.

If the debt of such a collusive creditor on which he bases his attachment is simulated, it but adds another, but not the only, ground of fraud in such instances. The averments of collusion and fraud as made in the bill, are, we apprehend, sufficiently specific. The demurrer was properly overruled, and the decree of the Chancery Court is affirmed.

Affirmed.